# REPORTS.

## CHESHIRE,
### JULY TERM, A. D. 1842.

## HOLMES, Admr., *vs.* FISHER.

If a person take a bond and mortgage to himself, with a condition to support him and his wife during their lives; an action upon the mortgage, to enforce the performance of the condition, for the benefit of the wife, after his decease, must be brought in the name of his administrator.

The widow cannot lawfully enter for condition broken.

If she marry again, and reside with the second husband without any claim for support, it must be considered as voluntarily waived for the time being; and in order to constitute a breach of the condition, subsequently, there must be a demand of the support required, and a refusal.

It is not necessary to make the demand upon the land mortgaged, unless that be the place where the support is to be furnished.

The widow may make a valid demand, notwithstanding she has married again; and it may be made upon the administrator of the mortgager, in case of his decease.

But she cannot make the duty more onerous by contracting another marriage; a second husband would have no right to participate in the support; and she must be ready, when she makes the demand, to receive it at a convenient place, if none be designated, and in such manner as the terms of the obligation require.

WRIT OF ENTRY, to recover possession of a tract of land in Richmond. The action was founded upon a mortgage made by John Day to Othniel Day, the plaintiff's intestate. Plea, the general issue.

Upon the trial it appeared in evidence that Othniel Day was formerly the owner of the land, and on the 16th of May,

1818, conveyed it to his son, John Day, taking back a mortgage to himself, to secure the performance of the condition of a bond executed, at the same time, by John Day, the mortgager.

The condition of the bond was, that "if the said John Day, his heirs, executors and administrators, do and shall, well and truly support and maintain Othniel Day, and Rebecca Day, his present wife, in sickness and health, befitting persons of their age and degree in life, with clothing, lodging, washing, mending, and every other necessary of life, and also pay all debts and taxes that the above named Othniel Day now oweth, and also pay to the above named Othniel Day two dollars per year, to be paid in the month of October annually, without fraud or deceit, and at the death of the above named Othniel Day and Rebecca Day give their bodies a Christian-like burial, then the said bond is to be null and void, but otherwise to remain in full force and virtue."

Othniel Day died in June, 1819. His widow, Rebecca Day, lived with her son, John Day, until July, 1829, at which time she married one Bancroft, and went to reside with him.

John Day died in October, 1832, leaving a widow and six children.

The defendant subsequently married his widow, and was appointed guardian of three of the children, the eldest of whom is fourteen years of age. They reside upon the premises, with the defendant and his wife. There was evidence that the defendant is poor and intemperate.

Subsequent to the decease of John Day, said Rebecca requested John Parkhurst, who was administrator of his estate, to provide her with suitable support. He took time for enquiry, but afterwards refused to do any thing upon the subject. She then entered upon the demanded premises, about four years prior to the commencement of this suit, (the land being at that time left vacant and unoccupied by the defendant,) leased them, and received the rents until April, 1840, when the defendant entered claiming the same.

Said Rebecca since her second marriage has lived with her husband, Bancroft, and has been supported by means independent of any aid from the bond, or the mortgaged premises.

No claim for support has at any time been made upon the premises.

A verdict was taken for the plaintiff, by consent, subject to the opinion of this court upon the foregoing case.

*Chamberlain*, for the defendant, contended that the plaintiff, as administrator of Othniel Day, could not rightfully maintain this suit ; and that no suit could be maintained without a demand for support upon the premises.

*Edwards*, for the plaintiff. The bond makes provision for the support of the wife, as well as that of the husband. To avail herself of this provision for her support, the administrator of the husband must prosecute an action for her benefit.

The case shows a demand for support, and that she has had no support from that source. She was under no obligation to demand the support upon the premises; and, moreover, the evidence of the condition and habits of the defendant show that she could not be suitably supported there, and that a demand of it at that place was therefore unnecessary.

PARKER, C. J. The defendant entered without any title to the premises, either in his own right, or in right of his wife. His wife it seems had a right of dower on the decease of her former husband, John Day, subject to the mortgage under which the plaintiff claims; but it does not appear that the dower had been assigned. If it had been, it could avail nothing against the mortgage.

He is guardian of three of the children of John Day, but their title is subject to the mortgage. If it were not so, a question might be raised, how far the defendant could avail himself of it under his plea.

But he is in possession, and may maintain that possession, against any one who cannot show a better right.

The plaintiff sues as administrator of Othniel Day, and makes his title under a mortgage from John Day to his intestate. He is the proper person to enforce the performance of the condition of the bond, by a suit upon the mortgage. His intestate alone could have brought the action in his lifetime.

The entry of Rebecca Bancroft into the land is therefore of no importance. She could not lawfully enter, because the mortgage was not made to her, and gave her no title to enter. Her entry and possession cannot avail to the benefit of the plaintiff. He claims nothing under any title from her.

In order to sustain this suit upon the mortgage, it must appear that the condition has been broken. The mortgager, John Day, and his representatives, were entitled to possession until a breach of the condition occurred. 9 *N. H. Rep.* 201, *Flanders* vs. *Lamphear.*

John Day performed the condition during the life of his father, and until the marriage of his mother to Bancroft. After the marriage, the mother lived with Bancroft, and no claim was made for any support during the lifetime of John Day. Under these circumstances it must be considered as voluntarily waived, for the time being; and the plaintiff does not contend that there was any breach up to the time of his death.

Upon his decease, the duty of performing the condition devolved upon his administrator and heirs.

In order to constitute a breach of the condition subsequent to this, there must be a demand of the support, and a refusal; and the question arises, whether there has been a sufficient demand.

A demand for support was made upon Parkhurst, the administrator of the estate of John Day, by Mrs. Bancroft, which he refused to comply with. It was not necessary to

make a demand upon the heirs also, if this demand were well made.

We are of opinion that it was not essential that the demand should be made upon the mortgaged premises. The land mortgaged was not necessarily the place where the support was to be furnished. *Flanders* vs. *Lamphear, before cited; 4 Pick.* 497, *Fisher* vs. *Fiske.*

Nor was it necessary that the demand should be made by the administrator of Othniel Day. The bond and mortgage were taken for the benefit of his wife as well as himself. Although she was not a party to it, she had an interest in the subject matter, and after his death she might well make a demand of what was secured for her use.

Prior to the time when it was made, she had married Bancroft, and had gone to live with him. This did not defeat her right to the support, or her right to ask for it. But it may have an influence upon the demand which was made. The condition of the bond was not to furnish her certain articles, or a sum sufficient for her support, but she was to be supported and maintained with clothing, lodging, washing, mending, and every other necessary of life. She could not make this duty more onerous, by contracting another marriage. There was no obligation to furnish provisions, or lodging, &c., in the use of which her husband should participate, nor did the bond require that she should be supported wherever she might live with him. She must have been ready, when she made the demand, to receive the support at a convenient place, none being designated, and in such a manner as the terms of the obligation required. Whether she could do this without separating from her husband, may admit of question, and the circumstances under which the demand was made do not appear. A mere demand of support, while living at a distance from the place, with her husband, may not have imposed any duty upon Parkhurst, the administrator of John Day, if he objected for that reason. But his refusal, if unqualified, or put upon

the ground that she had no right under any circumstances, might perhaps obviate the objection.

And we are of opinion that there must be a farther enquiry into the circumstances attending the demand and refusal; and for this purpose there must be a

*New trial.*